THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY WESTON *et al.* Plaintiffs in Error.

*Opinion filed October 26, 1908.*

1. APPEALS AND ERRORS—*motions and affidavits must be saved by bill of exceptions.* A petition for change of venue, affidavits in support thereof and the motion for a continuance are not a part of the record unless so made by a bill of exceptions, notwithstanding they are copied in the transcript of the record.

2. SAME—*when action of court in permitting improper statement by an unsworn witness cannot be reviewed.* For the purpose of a preliminary examination to enable the court to determine whether a witness and her interpreter can understand each other sufficiently it is not necessary that either be sworn, and if no objection is made to the presence of the jury or to the fact that the parties were unsworn, the action of the court in permitting them to state that the defendants assaulted and raped the witness can not be reviewed, even though the question calling forth such statement was objected to.

3. RAPE—*declarations of prosecutrix as to who committed the rape are incompetent.* In a prosecution for rape it is proper to prove by a witness that the prosecutrix made complaint as to how she had been treated but not what she said as to who were the guilty parties, but error in permitting proof of her statements as to who were the guilty parties will not work reversal if there is competent uncontradicted evidence sufficient to sustain the verdict.

DUNN, J., CARTWRIGHT, C. J., and SCOTT, J., dissenting.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. P. A. PEARCE, Judge, presiding.

C. H. LAYMAN, W. H. WILLIAMS, and T. J. LAYMAN, for plaintiffs in error.

W. H. STEAD, Attorney General, and W. P. SEEBER, State's Attorney, (B. H. TAYLOR, of counsel,) for People.

Mr. JUSTICE FARMER delivered the opinion of the court:

The plaintiffs in error, Harry Weston, John Davis and Louis Simpson, were found guilty in the circuit court of Franklin county upon an indictment charging them with

rape upon the person of Eliza Eason and were each sentenced to a term of twelve years in the penitentiary. Error has been assigned on the denial of their application for a change of venue and their motion for a continuance, but these errors cannot be sustained because the action of the court has not been preserved for review. A petition and certain affidavits have been copied in the transcript filed, but they are not contained in the bill of exceptions, which makes no reference either to the application for a change of venue or the motion for a continuance. Such motions are no part of the record unless made so by a bill of exceptions. (*McElwee* v. *People,* 77 Ill. 493; *Chicago and Eastern Illinois Railroad Co.* v. *Goyette,* 133 id. 21.) These alleged errors therefore cannot be considered.

The third and fourth errors assigned may be treated together. They are, that the court erred in permitting Nove Morgan to act as interpreter in the examination of Eliza Eason, the prosecuting witness, without being sworn, and in permitting the said Eliza Eason to give evidence by making signs, in the presence of the jury, without having been sworn.

Eliza Eason was a deaf mute and had never attended any school where deaf mutes were taught the sign language taught in such schools, and she was only able to communicate with other persons by signs of her own, which could be understood by people who were with her a considerable time. She was fifty-seven years old, and on account of her affliction and lack of educational advantages was very ignorant. Her husband also, with whom she resided at the time the alleged crime was committed, was an ignorant man. At the trial, W. H. Williams, a lawyer, who understood the deaf mute sign language fairly well, was sworn to act as interpreter. There was present also at the trial a man named Nove Morgan, who was a partially educated deaf mute, and as Mrs. Eason could not make herself understood to Williams, Morgan was requested to ask Mrs. Eason

questions and to interpret her answers to Williams, who then interpreted them to the court. Neither Morgan nor Mrs. Eason was sworn. A number of questions asked by counsel for the prosecution were interpreted by Williams to Morgan and by Morgan to Mrs. Eason. Her answers, so far as Morgan could understand her, would then be interpreted to Williams and by Williams to the court. The first several questions were for the purpose of ascertaining to what extent Mrs. Eason could understand questions asked her by Morgan and to what extent she could communicate to him her answers to questions she understood, in such manner as that he could understand her. This examination showed that Morgan and the witness could communicate with each other so as to be understood to some extent, but not fully, so that Morgan could communicate answers to all questions intelligently to Williams. This examination was conducted in the presence of the jury. After a number of questions had been asked, Williams was directed to request Morgan to ask the witness what any men did to her, if anything, on the evening of June 4, 1907. The record shows counsel for the plaintiffs in error "objected to the question." The court stated that as it was preliminary the question might be asked. On the question being asked the witness through Morgan, she answered "two men," and Morgan stated that the witness could not understand him very well but that he could understand her signs a little. He was then directed to ask her how the men treated her. On attempting it he was unable to make her understand. The question being again repeated, Morgan interpreted her answer, through Williams, "She says that Simpson and Weston choked her;" that one caught her by the arm, one caught her by the throat and one scratched her. She also said that Davis and Simpson had intercourse with her, and that she did not know Weston. She was then asked, through interpreters, whether she knew the nature of an oath and the consequences of swearing to a falsehood, to

which she answered she would go to hell if she told a lie. Counsel for the prosecution thereupon announced he would proceed no farther, and this is the substance of all that occurred during the time Mrs. Eason was being examined, and she was not again recalled. It was not intended that this examination was to be her testimony in the case.

Plaintiffs in error, in their assignment of error, say the court erred in permitting Morgan to act as interpreter without being sworn and in permitting Eliza Eason to give evidence in the presence of the jury without being sworn. The questions asked her and the answers given by her to them were not for the purpose of getting her testimony before the jury, but were for the purpose of ascertaining whether, by means of the interpreters, her testimony could be obtained. For that purpose it was not necessary that Mrs. Eason or Morgan should have been first sworn. But the examination should not have been conducted in the presence of the jury. It was intended for the court and the jury should have been removed. The record, however, does not show that any objection was made to the examination taking place in the presence of the jury or on account of the witness and Morgan not having been first sworn. When the witness was asked what, if anything, the men did to her, counsel for plaintiffs in error "objected to the question." The court stated that as it was preliminary the question might be asked, and no other objection was made. While it was improper to have allowed this examination to be conducted in the presence of the jury, if counsel had objected to its being so done they should have so stated in their objections to the court, and doubtless the jury would have been removed. Not having made any such objection and obtained a ruling of the court thereon and preserved an exception thereto, nothing is preserved by this assignment for our review. *Graham* v. *People,* 115 Ill. 566; *Hughes* v. *People,* 116 id. 330.

The evidence for the prosecution abundantly established the guilt of plaintiffs in error of the crime charged in the indictment. They went together to the house on a farm in the country in the evening of June 4, where the prosecuting witness resided with her husband. Willis McElyea, a cousin of Mrs. Eason's husband, also lived with them. When they came to the house the manner of plaintiffs in error frightened Eason and McElyea, who saw them approaching, and Eason went in the house, closed the doors and attempted to keep plaintiffs in error out. McElyea went into the orchard and hid. One of plaintiffs in error wore a star, and they stated they were officers and had come to arrest Eason. One or more of them had a pistol. They forced the door open, whereupon Eason seized a gun he had in the house, but instead of using it ran out and across the fields for help. McElyea joined him in the race and they gave the alarm to the neighbors, none of whom lived closer than one-fourth mile to Eason's house. When the neighbors came Mrs. Eason was out in the orchard, at the edge of the woods, where she had been dragged by the plaintiffs in error and was being detained by them or some of them, and her attempts to cry out and her moanings were heard by a number of witnesses before she was rescued. We shall not go farther into the sickening details of the evidence, but it justified the jury in finding plaintiffs in error guilty of most brutally and cruelly assaulting and outraging an old, ignorant woman, who was a deaf mute. The only evidence offered on behalf of plaintiffs in error was an attempt to impeach Mrs. Eason's virtue and chastity.

Willis McElyea testified, for the prosecution, as to the frightened, bruised and bloody condition of Mrs. Eason when she was rescued by the neighbors, and that she gave him to understand, by her method of talking by signs, that she had been dragged out to the woods and a rape committed upon her. He testified Mrs. Eason told him she was dragged out to the woods by two of plaintiffs in error, and

was then asked what she said they did. He replied, "She said they committed a rape on her, the way I understood it." The record shows counsel for plaintiffs in error "then and there objected to the witness' understanding, for the reason that he apparently does not know what she did say." Without ruling upon the objection the court inquired of the witness if he understood, from the motions and signs of Mrs. Eason, what she was telling him, to which he replied he did, and, after describing some of her motions, testified Mrs. Eason said they beat her over the head with a stick of wood. The record shows counsel for plaintiffs in error "objected to the testimony of this witness on this point." The objection was overruled and an exception preserved. No grounds for the objection were stated by counsel. For aught that appears, this objection was based upon the same grounds as the first one, namely, to the witness testifying to his understanding, for the reason that he apparently did not understand. It was competent for the witness to testify to Mrs. Eason making complaint as to how she had been treated but not what she said as to who the guilty parties were. If the objection had been based upon this latter ground it would have been error to have permitted the witness to testify who Mrs. Eason said had outraged her. But that was not the basis of the first objection made, as is shown by the reasons given by counsel for making the objection; and as the second objection was to the same statement, the court might well have understood, in the absence of any reasons being given for it, that it was based on the same grounds given for the first. That the grounds stated in the first objection were the only grounds of objection counsel intended to raise to this testimony is borne out by the assignment of error upon this question. The fifth assignment of error is, that the court erred "in permitting the witness Willis McElyea to testify as to what he understood, from the signs of Eliza Eason, about the assault." But if it were conceded this question was properly pre-

served, another witness, Williford Eason, was permitted to testify to the same statements of Mrs. Eason as to 'who it was that outraged her, without any objection. Besides, there was an abundance of competent uncontradicted testimony sufficient to sustain this verdict, and the result would undoubtedly have been the same if this incompetent evidence had not been admitted. Where this is true, error in the admission of incompetent evidence does not require a reversal of the judgment. *DuBois* v. *People,* 200 Ill. 157; *Jennings* v. *People,* 189 id. 320; *Jackson* v. *People,* 126 id. 139.

Some other errors of minor importance are assigned but not argued by counsel. We have examined them sufficiently to satisfy us that there is nothing in this record that would justify a reversal of this judgment, and it is accordingly affirmed.                    *Judgment affirmed.*

DUNN, J., CARTWRIGHT, C. J., and SCOTT, J., dissenting:

W. H. Williams, being called by the People for the purpose of acting as an interpreter, was sworn and interrogated first as to his ability to communicate with and understand Nove Morgan. He was then told to ask Nove Morgan, who was present but not sworn, as to his acquaintance with Eliza Eason, and he reported that Morgan said he knew her but could not tell how long,—whether more than ten years or not. Williams was then told to request Morgan to ask her what any men did to her, if anything, on the evening of June 4, 1907. The defendants, by their counsel, objected to the question, but the court overruled the objection, remarking that this was preliminary, and defendants excepted. Thereupon Williams testified that Morgan said that Mrs. Eason said that Simpson and Weston choked her; that one caught her by the arms, one by the throat and one scratched her, and that Davis and Simpson had connection with her. Williams was then told to ask Morgan if he could find out from Mrs. Eason if she knew what

the result would be if she told a lie, and he answered that Morgain said she said if she should swear to a lie she would go to hell, or down below. Counsel for the prosecution proceeded no further with the examination and Mrs. Eason was not sworn as a witness. For whatever purpose this examination was conducted, the effect of it was to get before the jury the unsworn statement of Eliza Eason as to the matter in controversy. It is no answer to say that it was not intended that this examination should be her testimony in the case. The witness detailed from the witness stand, against the objection of the defendants, her account of the very transaction that was the subject matter of the investigation. As evidence to be considered by the jury her statement so made was manifestly incompetent. It was mere hearsay. The jury heard it the same as any other evidence in the case, and were not instructed that it was not to be considered by them, even if it could be erased from their minds by an instruction.

It is said that the record shows only a general objection, and does not show any objection to the examination taking place in the presence of the jury. A general objection was all that was necessary, because under no circumstances could the testimony called for be competent. If it was sought to have Mrs. Eason's unsworn statement placed before the jury, that could under no circumstances be competent, because it was hearsay. If the examination was for the purpose of determining whether Morgan could understand Mrs. Eason and interpret her statement to Williams, then it was unnecessary and improper that the details of her statement to Morgan should be repeated either to the court or jury. Whether Morgan could understand and interpret was the preliminary question, and what she communicated to him was not proper to be given to the jury before that preliminary question was disposed of.

Willis McElyea testified, over defendants' objection, as to what he learned from Mrs. Eason after she had escaped

from the defendants. He testified not only to the fact that she made complaint, but to the details of the assault upon her as he says they were given by Mrs. Eason, and this conversation did not occur on the night of the assault but at various times subsequently, prior to the trial. Even if the fact of her complaint had been competent, the details given by her of the assault were not admissible. (*Stevens v. People,* 158 Ill. 111.) The defendants objected to the conversation when it was first asked for, and their objection should have been sustained. Later in the examination an additional objection was made because the witness was testifying to his understanding rather than what was said. The court made no ruling on this objection. But there was no waiver by the making of this additional objection of the general objection previously made to the whole conversation.

The court erred in both the particulars above mentioned in the admission of evidence. There is no ground for holding that the evidence did the defendants no harm. They were on trial for a serious crime, and, aside from the incompetent statements of Mrs. Eason, the evidence as to the particular offense charged against them was entirely circumstantial. They had the right to have this circumstantial evidence submitted to the jury and considered both with reference to their guilt and the punishment to be inflicted upon them if they were found guilty, unaffected by the incompetent statements of Mrs. Eason, the effect of which would manifestly be to inflame the minds of the jury against the defendants. It was the province of the jury in this case to fix the length of imprisonment to be imposed, and even though the defendants might have been found guilty without the incompetent evidence, it was of such a character as was calculated to seriously affect the punishment to be imposed, to the prejudice of the defendants.