Leonard E. KLEY, Plaintiff-Respondent,

v.

Warren ABELL, Jr., Defendant-Appellant.

No. 34194.

Missouri Court of Appeals,
St. Louis District, Division One.

July 18, 1972.

Fitzsimmons & Fitzsimmons, Clayton, for defendant-appellant.

Thurman, Nixon, Smith & Howald, Hillsboro, for plaintiff-respondent.

BRADY, Chief Judge.

Plaintiff initiated this action for injuries arising out of an automobile accident. Defendant appeals from a jury verdict of $15,000.00 in favor of plaintiff. He alleges reversible error in refusing to test the competency and impartiality of Marvin Kley, plaintiff's brother, to act as interpreter for plaintiff.

Plaintiff submitted a motion to dismiss this appeal based upon an improper statement of facts. Defendant's brief does contain a concise statement of the facts followed by a statement of the testimony of each witness. This is permissible. Triplett v. Wyatt, Mo.App., 360 S.W.2d 386. We have determined that the interests of justice require our action in this case. Plaintiff's motion is denied.

The accident in question occurred in the late evening hours on January 8, 1969 in St. Louis County, Missouri, and involved three automobiles. Plaintiff in this case is a 37-year-old man who is afflicted with a hearing and speech disability rendering him what is commonly called a deaf-mute. The nature of our inquiry renders testimony summarization unnecessary.

Prior to the actual commencement of the trial the attorneys for both sides met with the trial court in chambers. At that conference the defendant's attorney stated that he understood the plaintiff to be a deaf-mute who had no education, could neither read nor write, and was capable of communicating only by means of making grunts, gestures and motions. Plaintiff's attorney stated that any member of his family could understand plaintiff but that his brother, Marvin Kley, could best do so. He also indicated that plaintiff was capable of writing some things. Defendant's attorney requested the court to decide outside the hearing of the jury the competency of the plaintiff to communicate and of Marvin Kley to interpret his communications. He also objected to any member of the family acting as interpreter because of their bias, prejudice and interest in the case. Plaintiff's counsel stated he had no objection to a preliminary hearing outside the presence of the jury to determine competency. The court overruled the motion regarding the competency of plaintiff to testify and the competency of his brother to interpret for him, but stated he would allow Marvin's familial relationship to be explained to the jury.

After selection of the jury the defendant was allowed to examine Marvin Kley on voir dire prior to his testimony and his oath as an interpreter. Marvin was 32 years of age and had lived with his parents and plaintiff for 26 years prior to his marriage. He stated that he had no training in the field of communicating with deaf-mutes and that while plaintiff had attended the Institute for the Deaf in St. Louis for approximately one year he knew very little of the acceptable sign language normally employed by such people. Marvin testified he could understand many of the things plaintiff tried to communicate and he could do so better than anyone else by signs which he and plaintiff made and which were their own language developed since they were very young. He indicated plaintiff could read lips to a certain extent and

he could hear sounds and noises which were a little louder than normal voices.

During the trial plaintiff called Judy Kley, wife of Marvin, as a witness. On cross examination Mrs. Kley stated that she could understand some of the things the plaintiff said but mostly she wrote things down. Plaintiff's mother, Elsie Kley, testified that the plaintiff could read and write, and that she could understand him. She stated that he had learned to write at home and that he was learning to speak; that he was not totally deaf.

After the voir dire examination of Marvin, the plaintiff was duly sworn. The record reflects the following with regard to the questions and answers communicated between the interpreter and the plaintiff: "(All answers given during direct and cross examination of the plaintiff, Leonard E. Kley, are answered by Marvin Kley, acting as interpreter, after having communicated with the witness by various unrecordable oral sounds and by various gestures with his hands, arms and body; the witness, thereupon, by the same method communicated to the interpreter a response.)" Examination of the plaintiff was then conducted through the interpreter. Plaintiff's answers consisted of statements made through the interpreter and indications of directions and points by plaintiff on different exhibits. In some instances Marvin would write on a pad and pass the pad to plaintiff who would write a reply and return it to the interpreter. None of these writings are contained in the record of trial and there is nothing to indicate that they were shown either to the court or to the defendant.

▌ Research has failed to disclose any other case dealing with the precise issue here presented but there are some lamp posts to light our path. The basic principles are well established. Statutory enactment empowers our courts to appoint interpreters or translators from time to time. Section 476.060, RSMo 1969, V.A.M.S. Such appointments generally rest within the discretion of the trial court, State v. Aguelera, 326 Mo. 1205, 33 S.W.2d 901; State v. McGinnis, 158 Mo. 105, 59 S.W. 83, as does the manner of examination of a witness in open court. Daudt v. Steiert, Mo., 205 S.W. 222. It is equally well established that the competency of a witness to testify is a matter for the trial court, not the jury. State v. Cox, Mo., 352 S.W. 2d 665; State v. Stidham, Mo., 305 S.W.2d 7.

Those cases dealing with the testimony of witnesses unable to speak or hear have uniformly held that they are not thereby deemed incompetent merely because of that disability. State v. Howard, 118 Mo. 127, 24 S.W. 41, one of the first cases so holding, was an appeal from a murder conviction where one of the witnesses could neither read nor write and had no knowledge of any language. The record did not disclose how the testimony was elicited. Answering the contention the witness was incompetent the court stated at l. c. 45 of 24 S.W.: "Such unfortunate persons may be witnesses, if able to communicate their ideas by signs, through the medium of an interpreter, or by writing, if they write and read writing; and even if the witness can write, this does not prevent his testimony from being communicated by signs. Either way may be adopted." This principle was reaffirmed in State v. Smith, 203 Mo. 695, 102 S.W. 526, wherein the prosecutrix in a rape case was deaf and dumb. The witness in *Smith* could read and write and knew acceptable sign language. Defendant alleged error by trial court in appointing the interpreter, an instructor at the State Deaf and Dumb Institution, because of bias and prejudice. Answering this contention the Supreme Court held at l. c. 528 of 102 S.W.: "This was a matter for the determination of the circuit court, and we see no ground for charging that court with any want of proper discretion in the matter."

▌ Restating the foregoing principles as they apply to this case, we hold a deaf-mute person is competent to testify if

he can communicate; that such person may give his testimony through sign language and an interpreter or reading and writing or both; that the method of testimony to be used is a matter for the trial court in the exercise of its sound discretion; and that when the trial court appoints an interpreter it has the duty to determine if the interpreter is competent. The determinative issue is whether the denial of the trial court in this case to conduct a competency hearing out of the presence of the jury was an abuse of discretion. We hold that it was.

By the very nature of his position, an interpreter is at once a witness and to a certain extent an officer of the court. As a witness his testimony as to what is communicated to him is open to such weight as the jury may deem fit to accord it. As an officer of the court it is his duty to be the medium and conduit of an accurate and colorless transmission of testimony from the witness to the court, the parties and the jury. State v. Chyo Chiagk, 92 Mo. 395, 4 S.W. 704. An interpreter who functions with the sanction of the court necessarily enjoys a preferred position, especially where, as here, his interpretations are not subject to refutation. The most competent and least biased person available should be appointed. In order for the trial court to make this selection it necessarily follows that either party must be allowed to show that the interpreter is competent or that he is not impartial. State v. Chyo Chiagk, *supra*, 4 S.W. 1. c. 709. Since such a proceeding to determine competency may well involve matters irrelevant to the issues in the case, it also follows that such a hearing should be held in the jury's absence. People v. Weston, 236 Ill. 104, 86 N.E. 188. Failure of the trial court to conduct such a hearing despite defendant's request and plaintiff's acquiescence was error.

We are aware of the general reluctance of courts to reverse cases of this nature based on bias and prejudice of the interpreter. This refusal is normally based upon lack of proper objection (People v. Weston, *supra*), failure to show prejudice or harm to the defendant (State v. Burns, Iowa, 78 N.W. 681), or deference to the discretion of the trial court (Burgess v. State, 256 Ala. 5, 53 So.2d 568). See also 172 A.L.R. 923, 1. c. 941. In the instant case the objection was properly raised and preserved.

The court did not determine if Marvin could translate plaintiff's testimony or if Marvin was unduly biased or prejudiced. There was evidence that plaintiff could hear and lip read to some extent and that he could read and write. He did in fact write some messages to Marvin and read some from him while on the stand. In spite of this fact and without any attempt to discover if this method could be used to elicit plaintiff's testimony, the trial court permitted a method to be used which, so far as this record discloses, was unintelligible to anyone but the plaintiff and Marvin. Such testimony therefore could not be verified by defendant, the court, or the jury. The trial court should have taken all steps necessary to insure as fair and honest a translation as possible. At the very least it should have allowed defendant's counsel to conduct the inquiry to which plaintiff's counsel had agreed. While we recognize that the rule set out in *Howard, supra,* allows for interpretation of signs or writing or both, when one method is clearly unintelligible the other method should be examined for possible use.

We know of no cases from any jurisdiction requiring a competency hearing. Therefore we feel it necessary to set forth our view as to what such a competency hearing should seek. Upon proper objection the trial court must determine: (a) if the witness can communicate at all, and if so, how such communication is accomplished (by writing, normal sign lan-

guage, or personal means such as here), (b) who can understand the communication, (c) which method of communication and interpretation is most likely to produce a fair and honest presentation of the witness's testimony, and (d) is the person who understands the witness best also the most qualified to act as an officer of the court. Plaintiff's mother testified she could understand him. In view of Marvin's very active interest in this case defendant should have been given the opportunity to discover if she would have been a better interpreter.

At the risk of repetition we emphasize that we do not hold that a relative cannot be an interpreter or that a person who is a deaf-mute is incompetent to testify. Our holding is that the trial court must, upon request, give the opposing party an opportunity to inquire as to the best method available and the best interpreter to be used if that method is selected. Particularly is this true where the parties agree to such an inquiry. It is only after the trial court in its discretion determines the best method of testimony and, if needed, the best interpreter available, that the credibility of the testimony thus elicited can be left to the jury.

In view of our holding on this issue we do not have occasion to consider the other contentions of error raised by defendant. Many of the alleged errors were not raised in defendant's motion for a new trial and therefore are not subject to our review. Arroyo v. Keller, Mo.App., 433 S.W.2d 584. Of those allegations remaining there is nothing to indicate recurrence upon retrial.

For the foregoing reasons the decision of the circuit court is reversed and cause remanded for further proceedings consistent herewith.

WEIER and CLEMENS, JJ., concur.