**STATE of Missouri, Respondent,**

v.

**Fred E. GIVENS, Appellant.**

**No. WD 37066.**

Missouri Court of Appeals,
Western District.

Aug. 19, 1986.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Sept. 25, 1986.

Application to Transfer Denied
Nov. 18, 1986.

Sean O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BERREY, P.J., and PRITCHARD and DIXON, JJ.

BERREY, Presiding Judge.

Defendant was convicted of two counts of assault in the first degree with a deadly weapon. Pursuant to a finding by the court that defendant was a persistent offender, defendant was sentenced to consecutive terms of life and fifteen years imprisonment. From this defendant appeals.

The participants in this affair are Fred Givens, the defendant, Laura Cobb, defendant's sometime girlfriend, and John Bryant, a two-week acquaintance of Laura Cobb.

Bryant was a construction worker and on August 21, 1984, he was sent home early due to rain. Bryant lived in Kansas City, Kansas. He returned to his home after picking up some bug spray and then went to Cobb's apartment at 3835 Main in Kansas City, Missouri. Cobb and Bryant then engaged in various activities. They went to the Plaza for a snack and did some shopping. Bryant then took Cobb home, parked his car and went out to eat. Bryant went back to Cobb's apartment and she was cleaning and doing dishes. While at Cobb's, the defendant came in and Cobb left with him. Bryant was seated and drinking a beer when Cobb came back to the apartment about one-half hour later. Cobb commenced cleaning her apartment again when the previous visitor returned. By now Bryant was in his "underwear." Defendant walked in the door and turned his back on Bryant. He then "wheels around with a gun in his hand" and Bryant lunged at him and the man shot Bryant in the neck. Defendant then walked up and shot Bryant in the neck again, the second shot hitting Bryant's spine, leaving him paralyzed from the waist down. Cobb was yelling and jumping up and down on her bed. Defendant fired several more shots, one of which hit Cobb in the hand and caused permanent damage to the thumb by destroying the thumb joint. Defendant then walked to the door and said to Cobb, "You know that I love you." He then

stated, "Look what I did to that poor man." At this time Bryant was feigning death.

Laura Cobb testified that the defendant came to her apartment to borrow a can opener. She later saw defendant in the apartment building hallway while she was talking with another person. Defendant subsequently accused Cobb of having sex and of prostituting with John Bryant. Defendant said, "where is my cut ... I'm supposed to be your man, I'm supposed to get half." Cobb told him he wasn't her man and returned to her apartment. When she entered the door of her apartment defendant forced his way in and the tragic shooting unfolded.

Bryant denied he had a gun or a weapon other than a pocket knife; it was in his pants pocket and he was out of his pants. Bryant had no previous conviction. Defendant acknowledged he had been previously convicted of second degree murder and mail theft.

■■■ Laura Cobb's voice had no volume and was virtually inaudible beyond several feet. Cobb had swallowed lye at the age of two which destroyed her vocal cords and caused severe damage to her esophagus and stomach. She was hospitalized for long periods following this episode. Her half brother Gaylon King had been quite close to her for the past seven years and could understand her and communicate with her. As a result of this speech deficiency the trial court held a hearing to determine whether or not King should serve as an interpreter for Cobb. The court after the hearing found that Gaylon King could understand Cobb and that it would be beneficial for the court and the jury if King were to act as interpreter. The court also found that King was the most likely person to act as an officer of the court in the position of interpreter and noted that "he would be under oath." The learned trial judge held this hearing pursuant to *Kley v. Abell*, 483 S.W.2d 625 (Mo. App.1972). It is recognized that the appointment of an interpreter is within the discretion of the trial court, *State v. Aguelera*, 326 Mo. 1205, 33 S.W.2d 901, 904 (Mo.

1930), as is the competency of the witness to testify. *State v. Cox*, 352 S.W.2d 665, 672 (Mo.1961). The most competent least biased person should be appointed interpreter. *Kley, supra*, 483 S.W.2d at 628.

Under Point I the defendant complains that the trial court erred in permitting Gaylon King to act as interpreter. The facts herein differ slightly from those in *Kley v. Abell, supra*, in that those persons who were within several feet of Laura Cobb could understand her and the interpreter was used solely to amplify her answers. If he misspoke the court personnel was close at hand to rectify the matter. Defendant contends that because he had accused Gaylon King of having sex with Laura Cobb a week before he shot her that Gaylon King was biased and prejudiced. King denied this and stated that while he did not particularly like the defendant he would give accurate and verbatim repetition of Laura's testimony. The trial court observed the witnesses, heard the testimony, and concluded Gaylon King was the proper party to assist the court and the jury in interpreting Laura Cobb's testimony.

■■ The examination and recitation of Laura Cobb's testimony by Gaylon King proceeded without incident except that on one occasion the defendant's attorney told King "not to show any expression." The record has been combed to determine just what defendant's attorney meant and no satisfactory explanation appears. The interpreter responded to defendant's attorney that his expression had nothing to do with the question. No objection was registered by the defendant to this occurrence. The defendant's point I is denied.

Next the defendant alleges trial court error by sustaining state's objection to defendant's closing argument wherein self-defense was alleged.

The state's evidence established that after shooting Cobb and Bryant defendant stated he was going to jail. Later that same night he went to Truman Medical Center and when he was stopped by security guards, he stated "I didn't shoot any-

one." He later acknowledged he shot two people but "he could go to P.R.C. and it wouldn't be any problem." Between the time of the shooting and defendant going to Truman Medical Center he met a friend Tom Jones. He had said to himself "That's what I got to do, I got to talk to somebody and maybe I can calm down and then go to the police station." He talked to Tom Jones and got a bag and clean shirt from him. The defendant also had previously told Cobb "Look at what you made me do," and, "Girl this is all your fault."

The state commented on the many contradictions in defendant's trial testimony and on his alleged self-defense claim. Givens testified he had lived with Cobb and that Cobb had moved out about two weeks before the incident. The pair had frequent arguments and, according to defendant, Cobb said she was going to get her father's gun. Much of defendant's testimony dealt with his relationship with Cobb and her relationship with other men as well as the convoluted facts leading up to the shooting. In a narrative rambling two-page answer defendant attempts to explain the events immediately before the shooting. Defendant alleges he saw something in Bryant's hand and he hit that hand and the gun went off. Defendant then grabbed the gun, and in a struggle it went off again. At this point, defendant said Bryant slumped to the floor unconscious. No purpose would be served by exploring the rest of defendant's direct and cross-examination as the jury heard it all. In closing argument, the state's attorney said, "Just as he changed his story that night, first denying that he assaulted anyone, and then saying, 'Well, I'll go to P.R.C.' and then for the first time yesterday, it was self-defense." No objection was made to this argument by the defendant. Later in his closing argument the defendant's attorney went outside the record to assert that defendant's trial testimony was in fact not the first time he'd claimed self-defense. The state objected and the objection was sustained. Defendant alleges he was retaliating for the state's comment on defendant's self-defense claim. The record was replete with

defendant changing his position and nothing contained therein establishes a claim of self-defense.

█ The trial court has wide discretion and latitude in controlling closing argument. *S.G. Payne and Co. v. Nowak*, 465 S.W.2d 17, 20 (Mo.App.1971), and the discretion is not abused by prohibiting argument de hors the record, *State v. Brown*, 699 S.W.2d 512, 513 (Mo.App.1985).

█ The reference to subject matter not in evidence during closing argument is improper. *State v. Davis*, 684 S.W.2d 38, 44 (Mo.App.1984). In the instant case the state was commenting on the obvious since the defendant had made contradictory statements regarding his role in this vicious assault.

The trial court did not err sustaining the state's objection. Defendant's point II is denied. The judgment is affirmed.

All concur.