THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE E. RADER, Defendant-Appellant.

Fifth District No. 5—87—0038

Opinion filed May 2, 1989.

Daniel D. Yuhas and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

Randall J. Rodewald, State's Attorney, of Chester (Kenneth R. Boyle, Stephen E. Norris, and Matthew E. Franklin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

On August 21, 1986, George E. Rader was charged by information in the circuit court of Randolph County with armed violence predicated on the unlawful manufacturing of more than 500 grams of a substance containing cannabis while armed with a pistol; with the unlawful manufacture of more than 500 grams of a substance containing cannabis; with the unlawful possession of more than 500 grams of a substance containing cannabis; with the unlawful use of a weapon, for knowingly carrying concealed on his person a pistol when he was not on his own land, in his own abode, or fixed place of business; and possession of a firearm without a firearm owner's identification card.

At his trial, Harvey Eggemeyer testified that while cutting weeds on his property, he noticed several plots of unusual looking

plants growing along a creek. He took several of the plants to the county agent, where they were identified as cannabis, and subsequently called the sheriff's office.

The marijuana plants were placed under surveillance, and on August 20, 1986, DCI Agent Ed Thraikill observed two men approach the plots from the other side of the creek. He radioed this information to DCI agent Kenneth Sylvester and sheriff's deputy Lyndon Thies, who were hiding in one of the plots of marijuana. When the two men came within a few feet of Thies and Sylvester, they stood up, identified themselves, and placed Rader and the other man, James Blockley, under arrest.

Upon searching the suspects, police found a .25 caliber semiautomatic pistol in one of Rader's pants pockets. Rader also had a folding knife which had a resinous residue, later determined to contain cannabis, on the blade. In addition, police seized from the suspects a green bucket full of water, a brown pail, two cans of plant fertilizer, a camera, and a can of insect repellent. After being arrested, Rader told the police that he and Blockley were going to fertilize some of the plants and take them out early, before "them," and that he and Blockley were going to be blamed for "this." Blockley also told police that he had seen a silver Pontiac in the vicinity and that the driver of that car had been cultivating the marijuana.

After Rader and Blockley were arrested, the plants were cut down and were all identified to be cannabis. From the height of some of the plants, it appeared that they had been planted several months prior to Rader's arrest. Police found some plants that had been freshly cut and some that had been cut sometime earlier.

Testifying in his own behalf, Rader stated that Blockley lived next to the Eggemeyer farm near where the marijuana plants were found, and that Blockley had told him about the marijuana about mid-July. Rader also said that he had first seen the marijuana one week prior to his arrest and at that time had used his knife to cut some branches for his own personal consumption. Rader testified that he and Blockley had intended to fertilize some of the plants and harvest them before the growers returned. He also testified that he had the gun with him because he often used it to target shoot on Blockley's property.

After a jury trial, Rader was convicted on all counts except possession of a firearm without an FOIC card, on which the State declined to have the jury instructed. Rader was sentenced to eight years' imprisonment on the armed violence charge, seven years on the manufacturing charge, and five years on the possession charge,

with all sentences to run concurrently. The court declined to sentence Rader on the unlawful use of a weapon charge. Additionally, Rader was fined $43,584, the street value of the marijuana, and $4,358.40 for the Traffic and Criminal Conviction Surcharge Fund. This appeal followed.

On appeal, Rader argues that the State failed to prove beyond a reasonable doubt that he was guilty of either manufacturing or possession of cannabis. Rader also argues that because the evidence is insufficient to prove the felonies on which the armed violence charge is predicated, it too must be vacated.

■ Under *People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44, *cert. denied* (1984), 465 U.S. 1036, 79 L. Ed. 2d 708, 104 S. Ct. 1310, a defendant may not be convicted of both armed violence and its predicate felony where both offenses are based on the same physical act. Rader argues that his armed violence conviction was based on the same physical acts as the underlying felonies of manufacturing and possession of cannabis. The State concedes that and Rader's convictions for manufacturing and possession of cannabis should be vacated. Rader had also argued that he could not be convicted of both manufacturing and possession of cannabis as possession was a lesser included offense of manufacturing cannabis under the facts of this case, a point which the State conceded, but we need not address that argument. Rader further argued in his brief that he was denied due process of law where the jury was instructed that it could convict him of armed violence based on either the manufacturing charge or the possession charge, where the information charged him only with armed violence predicated on the manufacture of a substance containing cannabis. In his reply brief, however, Rader acknowledges that such an instruction was permissible under *People v. Simmons* (1982), 93 Ill. 2d 94, 442 N.E.2d 891.

■ The only remaining issue, with the exception of the propriety of the fines, is whether the evidence was sufficient to prove Rader guilty beyond a reasonable doubt of armed violence. To sustain a charge of armed violence, all of the elements of the underlying felony must be proved plus the additional element that the defendant was armed. The defendant need not, and indeed in cases such as this cannot, be convicted of the underlying felony. *People v. Frias* (1983), 99 Ill. 2d 193, 457 N.E.2d 1233.

■ Rader's own testimony clearly establishes that he and Block-ley knew the marijuana plants were there and that they were arrested as they prepared to fertilize at least some portion of the growing marijuana. Blockley and Rader were friends and Blockley

lived adjacent to the section of the Eggemeyer farm where the marijuana was located. It is also clear from the record that the marijuana had been growing for some time. Rader contends that he and Blockley were simply going to fertilize a few plants for their own use and that the marijuana was actually being grown by someone else. While his story is plausible, the credibility of a witness is determined by the trier of fact, and the jury was under no obligation to believe Rader's story. There is sufficient evidence for a jury to conclude that all of the requisite elements of both manufacturing and possession of cannabis were present in this case and Rader himself admits being armed with the pistol. We do not find the jury's conclusion to be against the manifest weight of the evidence and affirm Rader's conviction for armed violence.

Rader also challenges the propriety of the fines levied against him. Section 5—9—1.1 of the Unified Code of Corrections provides that "[w]hen a person has been adjudged guilty of a drug related offense involving possession or delivery of cannabis or *** a controlled substance *** a fine shall be levied by the court at not less than the full street value of the cannabis or controlled substances seized." Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.1.

Rader maintains that because the trial court did not specify which conviction the fine was based upon and because the convictions for manufacturing and possession of cannabis must be vacated, his fine must be vacated as well. Rader argues that refusing to vacate the fine would be to shift it to the armed violence charge, which is improper under the recent holding of *People v. Craddock* (1987), 163 Ill. App. 3d 1039, 516 N.E.2d 1357. In *Craddock*, the defendant was convicted of both armed violence based on the unlawful delivery of a controlled substance and the predicate offense of unlawful delivery. The trial court sentenced the defendant to prison on both charges and imposed the street value fine on the unlawful delivery charge. The appellate court vacated the unlawful delivery charge because it was based on the same physical act as the armed violence charge and refused to shift the fine to the armed violence charge, holding that to do so would be to impermissibly increase the sentence for the armed violence conviction. *Craddock*, 163 Ill. App. 3d at 1048, 516 N.E.2d at 1363-64.

In *People v. Costales* (1988), 166 Ill. App. 3d 234, 520 N.E.2d 421, the defendant was found guilty of both armed violence and its predicate felony, unlawful delivery. The court sentenced the defendant only on the armed violence charge and imposed a street value fine on that charge. The appellate court vacated the unlawful deliv-

ery charge but refused to vacate the fine as it was imposed specifically upon the armed violence charge. This case falls somewhere between *Costales* and *Craddock* because, here, the court did not specify upon which charge the fine was being assessed. The State argues that we should presume the fine was being assessed upon the most serious charge, armed violence, while Rader argues that to do so would be to shift the fine, impermissibly increasing his sentence on that charge.

 Where a defendant receives multiple convictions for offenses arising out of a single physical act, sentence is to be imposed on the most serious offense. (*People v. Mack* (1984), 105 Ill. 2d 103, 473 N.E.2d 880.) Contrary to Rader's characterization, *Mack* is not merely a rule of guidance for trial courts, it is binding authority. On review, a sentence is presumed to be proper and we must therefore presume that, in accordance with *Mack*, the trial court assessed the fine on the most serious charge, armed violence, and Rader has made no showing which would rebut that presumption. (See *People v. McCue* (1977), 48 Ill. App. 3d 41, 362 N.E.2d 760.) Further, section 5—9—1.1 of the Unified Code of Corrections makes imposition of the street value fine mandatory. Any sentence for a drug-related offense which does not include this fine falls below the minimum applicable sentence. Even if the trial court had specifically imposed the street value fine on the manufacturing or possession convictions, we would be compelled to shift it to the armed violence conviction upon vacating the other two offenses. Contrary to Rader's assertion, this would not be an impermissible increase in his sentence, merely a modification bringing the sentence into conformity with the minimum sentence required by statute. We recognize that this conflicts with the holding in *Craddock*, and to the extent it does, we choose not to follow it.

 Rader also argues that the trial court erred in assessing a surcharge of $4,358.40 for the Traffic and Criminal Conviction Shortage Fund. Section 9.1 of Illinois Police Training Act (Ill. Rev. Stat. 1985, ch. 85, par. 509.1) provides that "[i]n addition to *every* fine imposed by a court for a criminal or traffic offense, an additional assessment, *** shall be imposed *** in accordance with subsection *** (c) of Section 5—9—1 of the 'Unified Code of Corrections.'" (Emphasis added.) The statute clearly mandates that the surcharge shall be assessed on *all* fines imposed. Subsection (c) of section 5—9—1 imposes an additional penalty of 10%. Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.

Rader relies on *People v. Ruff* (1983), 115 Ill. App. 3d 691, 450

N.E.2d 1369, for the proposition that section 5—9—1(c) is inapplicable to fines levied under section 5—9—1.1. In *Ruff*, the defendant argued that in levying an automatic fine under section 5—9—1.1, the trial court erred because it failed to consider her financial resources and future ability to pay, as mandated by section 5—9—1(d). In holding that the trial court was not required to consider defendant's financial resources or ability to pay, the court stated:

> "Moreover, we conclude that the provisions of section 5—9—1 have no bearing upon a fine imposed pursuant to section 5—9—1.1. A fine assessed pursuant to the latter is to be levied 'in addition to any other penalty imposed.' Unlike section 5—9—1, section 5—9—1.1 contains no provision requiring an examination into an offender's personal situation. It calls for the mandatory imposition of a fine. Accordingly, a defendant's financial resources and ability to pay are irrelevant considerations when imposing a fine pursuant to section 5—9—1.1."

(*Ruff*, 115 Ill. App. 3d at 695, 450 N.E.2d at 1373.) We do not believe the holding in *Ruff* can be read as broadly as Rader asserts. *Ruff* stands only for the proposition that a trial court need not consider defendant's financial resources or ability to pay when assessing a mandatory street value fine. We find no error in assessing the surcharge of $4,358.40.

The convictions for manufacturing and possession of cannabis are vacated. The conviction for armed violence and the related fines are affirmed.

The judgment of the circuit court of Randolph County is affirmed in part and vacated and remanded in part.

Affirmed in part; vacated and remanded in part.

LEWIS and CHAPMAN, JJ., concur.