THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GUILLERMO COSTALES, Defendant-Appellant.

Fourth District   No. 4—87—0388

Opinion filed March 25, 1988.—Rehearing denied March 25, 1988.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Kenneth R. Baumgarten, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

On December 18, 1986, in the circuit court of McLean County, defendant Guillermo Costales was found guilty by a jury of the offenses of armed violence in violation of section 33A—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2), and unlawful delivery of a controlled substance in violation of section 401(b)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(2)). Judgment of guilty was entered as to both offenses. On May 5, 1987, the court sentenced the defendant to eight years in the Department of Corrections on the armed violence count and assessed a $2,000 mandatory drug fine pursuant to section 5—9—1.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.1). Defendant appeals alleging he received ineffective as-

sistance of counsel, and the court erred in assessing the drug fine. We affirm.

The defendant was indicted for the offenses of unlawful delivery of a controlled substance (cocaine) in violation of section 401(b)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(2)) and armed violence in violation of section 33A—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2). The armed violence count was based on defendant's being armed with a switchblade knife at the time he committed the unlawful delivery offense.

The State's evidence shows that on the late night of July 2, 1986, Steven Evans, an undercover agent for the Department of Criminal Investigations, and an informant picked up defendant, introduced to Evans as Bill, at his house for the purpose of purchasing an ounce of cocaine. Upon entering the vehicle, defendant confirmed the deal was an ounce of cocaine for $2,100. Defendant then directed as Evans drove across town to pick up the drugs.

On the way, defendant produced a switchblade knife and opened and closed it several times, noting he could cut someone quick and easy with it. He then closed the blade and held the knife near Evans' neck for a short period of time.

Upon reaching their destination, defendant directed Evans to stop the vehicle. Defendant left and returned with a clear plastic bag containing a white powdery substance and a small film canister. He gave the bag to Evans. They then proceeded to a parking lot where Evans gave defendant the $2,100. Upon Evans' giving a prearranged signal, the surveillance police responded to the scene, and Evans arrested defendant, who was sitting in the front passenger seat. Evans found the money pushed under the passenger seat and the canister and knife lying on the floorboard where defendant sat. Tests showed the bag contained 26.7 grams of cocaine, and the canister contained 0.5 grams of cocaine.

Defendant testified through an interpreter that he received a call from the police informant asking him to do him a favor. He later entered the vehicle with Evans and the informant. At that time, he showed them the knife which he just acquired and was using as a key chain. He never threatened Evans with it or spoke of cutting anyone.

He further testified he acquired the cocaine from a man named "Steve." He was only to receive $100 from the transaction. He only became involved to assist the informant. He stated he never saw the film canister before. The jury returned guilty verdicts on both counts.

At the hearing on the post-trial motion, defendant was repre-

sented by a different attorney and also had a different interpreter. Defendant testified the original interpreter was unable to communicate to him the testimony of witnesses and any comments by the court. He did admit that he knew some English and did not complain about the interpreter during the trial. The court noted it had observed the defendant during the trial, and defendant communicated freely with his attorney without using the interpreter. The court also expressed the opinion developed during the trial that defendant, to a considerable extent, understood English. The court denied the post-trial motion.

At the sentencing hearing, the parties stipulated that defendant at the time of the present offense was on bond for a delivery of cannabis charge. The court sentenced defendant to eight years in the Illinois Department of Corrections on the armed violence conviction and assessed a drug fine in the amount of $2,000 pursuant to section 5—9—1.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.1). This appeal followed.

Defendant first alleges he received ineffective assistance of counsel. He asserts three different reasons for this conclusion. These are (1) counsel failed to arrange for a competent interpreter to translate all aspects of the trial; (2) counsel allowed defendant to testify; and (3) counsel misapprehended the law involving armed violence.

The United States Supreme Court enunciated the standard to evaluate the ineffectiveness of assistance of counsel in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, which was adopted by Illinois in *People v. Albanese* (1984), 104 Ill. 2d 504, 526, 473 N.E.2d 1246, 1255, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061. The standard is that the constitutionally guaranteed assistance of counsel has not been provided if the defendant can prove that counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. (*Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) A defendant must establish that there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different. (466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.) The inquiry into counsel's performance must be whether counsel's assistance was reasonable consid-

238

ering all the circumstances. 466 U.S. at 688, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

Defendant first contends that counsel was ineffective because he did not use the interpreter throughout the entire trial, and the one selected was not competent. The Criminal Code of 1961 provides that a court shall appoint an interpreter when the court determines the accused is not capable of understanding the English language or expressing himself in the English language so as to be understood directly by counsel, court, or jury. (Ill. Rev. Stat. 1985, ch. 38, par. 165—11.) The calling of the interpreter is within the discretion of the trial court, and a conviction will be reversed only where there has been an abuse of that discretion which operates to deprive the defendant of some basic right. (*People v. Soldat* (1965), 32 Ill. 2d 478, 481, 207 N.E.2d 449, 451; *People v. Murphy* (1961), 21 Ill. 2d 149, 152, 171 N.E.2d 618, 620, *cert. denied* (1961), 368 U.S. 847, 7 L. Ed. 2d 44, 82 S. Ct. 76.) When an interpreter is used, the question is whether the testimony presented through the interpreter is understandable, comprehensible, and intelligible, and, if it was not, whether such a lack of intelligibility was brought out by an ineffective or incompetent interpreter. *People v. Harris* (1982), 104 Ill. App. 3d 833, 837, 433 N.E.2d 343, 346; *People v. Niebes* (1979), 69 Ill. App. 3d 381, 386, 387 N.E.2d 800, 803.

In the present case, the court observed at the time the defendant testified and again at the post-trial motion that defendant was capable of understanding and speaking the English language, and the appointment of an interpreter was simply to assist the defendant in fully communicating to the jury. The court also noted the interpreter was present throughout the trial, but defendant conversed back and forth directly with his attorney, and seldom, if ever, spoke to his interpreter. The record further reveals that during his testimony, the defendant referred to specifics of the testimony of the State's witnesses which were not interpreted for him. Therefore, we find the trial court's finding that defendant could understand English and did not need an interpreter was correct.

Since the defendant could understand English, it seems remarkable that he did not complain about the interpreter's translations at the time he testified. Since the testimony as relayed by the interpreter was responsive to the questions, and defendant did not complain at the time, we are led to the conclusion that the interpreter performed competently. We, therefore, find no difficulty with counsel's representation concerning use of the interpreter.

Defendant next contends counsel was ineffective because

counsel allowed him to testify, and his testimony further buttressed the State's case. He specifically argues that his testimony admitting possession of the knife was particularly damaging since if he had not testified, he could have argued he did not possess the knife at the time of the drug transaction because it was found on the floorboard of the vehicle and not on his body.

Every criminal defense attorney is subject to second-guessing by his client upon the client's receiving a conviction after trial. This is especially true concerning the question of whether a defendant should testify. The Supreme Court in *Strickland* was aware of this propensity for second-guessing and warned the courts against it, stating that the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.) To assist the lower courts in this decision, the Supreme Court stated:

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069."

A review of the evidence in the present case establishes that even assuming, *arguendo*, that defendant should not have testified, no prejudice to defendant resulted. The State's evidence establishes defendant delivered the cocaine. It also established defendant waved the knife around, and the knife was found on the floorboard where he was sitting at the time of the arrest. Also on the floorboard were the film container and the money pushed under the seat. It is clear that when the police arrived to make the arrest, defendant tried to hide these objects. The State's evidence establishes beyond a reasonable doubt that defendant possessed the knife at the time of the transaction.

We cannot help but note that a defendant has an absolute right to testify or to remain silent, and the ultimate decision in this regard is his alone. In the present case, the court clearly advised defendant he did not have to testify, and defendant acknowledged this but stated it would be better to testify and did so. Under these circumstances, it would be difficult to impute any negative results of this testimony to ineffective assistance of counsel.

■■ ■ Finally, defendant asserts counsel misapprehended the law by arguing to the jury defendant only possessed the knife and did not

attempt to use it, and, accordingly, should be found not guilty of armed violence. It is well settled that to sustain a conviction for armed violence, a defendant only needs to possess the weapon and not use it. (*People v. Haron* (1981), 85 Ill. 2d 261, 265-70, 422 N.E.2d 627, 629.) Our review of the record suggests that counsel was simply attempting to make some viable argument in the face of overwhelming evidence. However, even if we assume he did misapprehend the law on armed violence, that same overwhelming evidence makes it evident that no prejudice exists.

■ Defendant finally argues the court improperly assessed a mandatory drug fine pursuant to section 5—9—1.1 (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.1). At the sentencing hearing, the court sentenced defendant on the most serious offense, the armed violence, to eight years in the Illinois Department of Corrections. He also ordered defendant to pay the drug fine in question.

Defendant argues correctly, and the State concedes, that since the delivery of a controlled substance offense is the underlying felony in the armed violence offense and both arose out of the same physical act, the conviction for the delivery of a controlled substance must be vacated. (See *People v. Payne* (1983), 98 Ill. 2d 45, 54, 456 N.E.2d 44, 48, *cert. denied* (1984), 465 U.S. 1036, 79 L. Ed. 2d 708, 104 S. Ct. 1310; *People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477, 479.) He argues that since this conviction is vacated, there is no offense which requires the assessment of the mandatory drug fine, and this assessment was, thus, improper. We would agree if the sentencing court had indicated it was assessing the fine as a penalty on the unlawful delivery conviction. In that case, the fine would have been imposed on a conviction which must be vacated, and the fine would, therefore, be vacated.

■ In the present case, the court realized defendant could only be sentenced on the armed violence conviction. Therefore, the question is whether it is proper to assess the mandatory drug fine on the conviction for armed violence. We hold it is.

Section 5—9—1.1 provides:

> "When a person has been adjudged guilty of a drug related offense involving possession or delivery of cannabis or possession or delivery of a controlled substance as defined in the Cannabis Control Act, as amended, or the Illinois Controlled Substances Act, as amended, in addition to any other penalty imposed, a fine shall be levied by the court at not less than the full street value of the cannabis or controlled substances seized." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.1.)

The cardinal rule in statutory construction is to ascertain and give effect to the intent of the legislature. (*People v. Boykin* (1983), 94 Ill. 2d 138, 141, 445 N.E.2d 1174, 1175.) In determining the legislative intent, courts should first consider the statutory language. (*Boykin*, 94 Ill. 2d at 141, 445 N.E.2d at 1175.) The relevant phrase to this question is "drug related offenses involving possession or delivery of cannabis or possession or delivery of a controlled substance." If the legislature had wished to limit the imposition of this fine to only those offenses contained in the Cannabis Control Act (Ill. Rev. Stat. 1985, ch. 56½, pars. 701 through 719) or Illinois Controlled Substances Act, it could very easily have done so. However, the language used evidences an intent by the legislature to impose this mandatory fine in cases involving convictions for offenses where the surrounding facts indicate that the particular offense is drug related, and this drug involvement involves possession or delivery as defined in the two acts.

■■ In the present case, defendant was convicted of armed violence. The underlying felony offense was delivery of a controlled substance as defined by the Illinois Controlled Substances Act. This suffices to make the conviction for armed violence a conviction for a drug-related offense as envisioned by the statute. Therefore, in this case, the imposition of the mandatory drug fine based on the conviction for armed violence is proper.

For the above-mentioned reasons, we affirm the conviction for armed violence and the imposition of the mandatory drug fine, and we vacate the conviction for delivery of a controlled substance.

Affirmed in part; vacated in part.

GREEN, P.J., and SPITZ, J., concur.