The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

James D. BRALEY, Defendant–Appellant.

No. 92CA1356.

Colorado Court of Appeals, Div. V.

Dec. 30, 1993.

Rehearing Denied Jan. 27, 1994.

Certiorari Denied Sept. 12, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Matthew S. Holman, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Lozow, Lozow and Elliott, Gary Lozow, Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, James Dean Braley, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of one count of first degree sexual assault and one count of second degree sexual assault. We affirm.

Defendant participated in bringing women into the United States from Mexico and employing them as domestic help in his house or allowing them to stay as guests in his home. Several of his former housekeepers and one of his former guests reported to immigration officials, who were investigating defendant's possible involvement in alien smuggling, that they had been sexually assaulted by defendant.

Defendant was charged with two counts of first degree sexual assault against each of two different women and one count of second degree sexual assault against a third woman. Because all of the women had limited fluency in English, they testified at trial through a Spanish language interpreter.

## I.

For the first time on appeal, defendant argues that although the record contains the witnesses' testimony translated into English, the failure to make a Spanish language record deprives him of the ability to challenge the validity of the translation. Thus, he contends, the record is incomplete and cannot be completed thereby requiring a reversal of his conviction and a new trial.

Because defendant failed to raise any objection to the qualifications of the interpreter or to recording only the English translation, reversal under this contention is required only if the fundamental fairness of the proceeding has been so undermined as to cast serious doubt upon the reliability of the verdict. *See People v. Wood,* 743 P.2d 422 (Colo.1987). We find no reversible error.

The use of an interpreter during trial is governed by CRE 604 which provides that: "An interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation that he will make a true translation." Thus, an interpreter is evaluated as is any other expert witness: it must be shown that the proposed interpreter is qualified by virtue of his or her "knowledge, skill, experience, training, or education." CRE 702; *see State v. Burris,* 131 Ariz. 563, 643 P.2d 8 (Ariz.App.1982) (an interpreter is subject to the rules regarding the qualification of expert witnesses).

CRE 604 is identical to the federal rule, and therefore, federal interpretation is persuasive as to its meaning. *See People v. Nyberg,* 711 P.2d 719 (Colo.App.1985); *People v. Lupton,* 652 P.2d 1080 (Colo.App.1982).

According to the federal rule, "an interpreter is merely a conduit for information, passing on the statement to the listener without adding or detracting from it." 27 C. Wright & V. Gold, *Federal Practice & Procedure* § 6053 at 302 (1990); *see also Federal Practice & Procedure, supra,* § 6052.

An interpreter is subject to examination by counsel and the trial court concerning the accuracy of his or her translation. *See State v. Burris, supra.* In addition, interpreters are required to take an oath or affirmation that they will make a "true translation." CRE 604; *see State v. Tamez,* 506 So.2d 531, 533 (La.App.1987) ("[I]t is axiomatic that an interpreter should be a neutral and detached individual whose abilities are first screened by the court and who is sworn to make a true, literal and complete bilateral translation.").

After the interpreter has been qualified and sworn, CRE 604 imposes no standards on the interpreter's performance. "In other words, the rule does not require that the interpreter in fact render a true translation." *Federal Practice & Procedure, supra,* § 6055 at 319.

This failure to impose standards of performance does not signify an indifference to the

importance of a correct translation, but instead reflects the practical limits on the ability of the trial court to enforce such standards. *Federal Practice & Procedure, supra,* § 6055 at 320; *see also Stubblefield v. Commonwealth,* 10 Va.App. 343, 392 S.E.2d 197 (1990) (An interpreter's translation of a witness' testimony need not be literal, so long as the translation is equivalent to the answers of the witness).

■ Ultimately the qualification of an interpreter is a matter within the discretion of the trial court. *See* CRE 702; *U.S. v. Moya–Gomez,* 860 F.2d 706, 740 (7th Cir. 1988) ("Matters regarding the use of an interpreter are left to the discretion of the district court."); *cf. State v. Givens,* 719 S.W.2d 25 (Mo.App.1986) (The appointment of an interpreter is within the discretion of the trial court as is the competency of witnesses to testify).

Defendant contends that without a Spanish language transcript it is impossible to gauge the competency of the interpreter and, therefore, the accuracy of her translation. While it is true that, at this point in the proceedings, a word for word comparison of the Spanish and English versions of the testimony is not feasible, we do not agree with defendant that such a comparison is necessary in order to determine if he has received a fundamentally fair trial. ·

■ A trial court must determine the competency of an interpreter prior to the time when the interpreter begins his or her duties and any challenge to that competency should be raised before the translation begins. *See State v. Burris, supra.* Further, the interpreter's competency can be attacked by direct or cross-examination or by independent testimony. *See U.S. v. Desist,* 384 F.2d 889 (2d Cir.1967); *see also U.S. v. Manos,* 848 F.2d 1427 (7th Cir.1988).

Here, defendant had ample opportunity to assert a timely challenge as to the interpreter's qualifications, neutrality, and translations in the trial court. He also had the opportunity to object to any deficiency in the nature or manner of the interpreter's oath. *See People v. Avila,* 797 P.2d 804 (Colo.App. 1990).

Defendant has not directed our attention to any portion of the record which would tend to indicate that testimony of the Spanish-speaking witnesses was not being translated correctly. Neither has he suggested that the English translation has not been recorded reliably. Because we have no basis for concluding that the interpreter performed incompetently, we do not perceive an abuse of discretion by the trial court regarding the use of the interpreter. *See People v. Costales,* 166 Ill.App.3d 234, 117 Ill.Dec. 260, 520 N.E.2d 421 (1988).

We also do not agree with defendant that a recording of the witnesses' testimony in Spanish is necessary to ensure a reliable translation. We are not aware of any authority so holding. Any means of providing such a bilingual recording would necessarily be cumbersome and expensive. *See U.S. v. Boria,* 371 F.Supp. 1068 (D.P.R.1973). Accordingly, "[CRE 604] reflects the reasonable conclusion that, in light of these practical problems, the court should normally depend on the qualifications and oath or affirmation requirements of Rule 604 to produce an accurate translation." *See Federal Practice & Procedure, supra,* § 6055 at 321.

■ Moreover, the burden is on defendant to show that the deficiencies of the interpreter, or the lack of a recorded transcript of the Spanish language testimony, deprived him of a fair trial. *See U.S. v. Manos, supra; State v. Mohler,* 102 Or.App. 75, 792 P.2d 1239 (1990).

■ The record here reflects no substantial difficulties encountered by the interpreter, or by the court or counsel, in obtaining the English translation of the testimony. Defendant has not alleged any reason to believe that the interpretation of the testimony at trial was inaccurate, biased, or otherwise inadequate.

Because defendant has not affirmatively demonstrated that the failure to record the Spanish language testimony deprived him of his right to a fair trial, we do not perceive any reversible error. *See People v. Avila, supra.*

## II.

■ Defendant contends that the trial court erred in failing to sever the three counts on which he was tried. However, the record indicates that defendant failed to renew his motion for severance during or at the close of trial. Thus, he is deemed to have waived his right to challenge the denial of the motion, and we do not address it. *People v. Aalbu,* 696 P.2d 796 (Colo.1985); *People v. Weese,* 753 P.2d 778 (Colo.App. 1987).

## III.

Defendant next contends that the trial court erred in failing to exclude defendant's statement made to his daughter that "Mexicans were bred for sex" and Spanish–English dictionaries containing numerous underlined words. We disagree.

### A.

Relevant evidence is defined in CRE 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In resolving an issue of relevancy, a court must consider whether the proffered evidence is legally material to some factual issue in the case. *People v. District Court,* 785 P.2d 141 (Colo. 1990).

A trial court is vested with broad discretion in determining the relevance of evidence, and its decision will not be reversed on appeal unless an abuse of that discretion is shown. *People v. Roybal,* 775 P.2d 67 (Colo. App.1989). In determining whether the challenged evidence relates to a fact of consequence, we must look to the elements of the crime charged. *People v. Carlson,* 712 P.2d 1018 (Colo.1986).

As relevant here, a person commits the crime of sexual assault in the first degree when he knowingly inflicts sexual penetration and causes submission of the victim through the actual application of physical force or violence or by threat of death or injury, and in the second degree when he knowingly inflicts sexual penetration and causes submission of the victim by any means calculated to cause submission against the victim's will. *See* §§ 18–3–402 and 18–3–403, C.R.S. (1986 Repl.Vol. 8B).

■ Here, all of the complaining witnesses were from Mexico. The disputed statement was relevant to the issue whether defendant knowingly caused submission of the victims because it reflects his state of mind concerning his perception of the sexual attitudes of Mexican women. More particularly, it is probative of this issue as it indicates that defendant was possessed of a notion that sexual contact with a Mexican woman is acceptable under any and all circumstances.

■ We also determine that, for similar reasons, the Spanish–English dictionaries were relevant evidence. None of the victims spoke English with any degree of fluency. One of the victims testified that defendant used Spanish–English tapes as well as dictionaries to communicate with her. The fact that certain words were underlined, some of which related to sex and reproductive matters, has at least some tendency to illuminate, in conjunction with defendant's statement regarding Mexican women, defendant's state of mind with respect to having sexual relations with a Mexican woman.

### B.

The question then becomes whether, under CRE 403, the probative value of this evidence is substantially outweighed by the danger of unfair prejudice.

The thrust of CRE 403 favors admissibility. All effective evidence is prejudicial in the sense of being damaging or detrimental to the party against whom it is offered. However, unfair prejudice refers only to evidence which tends to cause a decision to be made on an improper basis. *People v. District Court, supra.*

There is no basis in the record for us to conclude that the evidence in this case tended to excite the emotions of the jury to irrational behavior, nor is there any suggestion in the record that the jury's decision was made on an improper basis. The fact that defendant was acquitted of the charges con-

cerning one of the three victims indicates that, to the contrary, the jury could fairly and properly weigh and evaluate this evidence.

## C.

Other words in the dictionaries were underlined that did not relate to sex or reproduction. Defendant also complains that certain of these additional underlined words were highly prejudicial and that, therefore, these portions of the dictionaries should not have been admitted into evidence. At the time the evidence was admitted, however, defendant did not request a redaction of the dictionary to eliminate the non-sexual underlined words. We must therefore evaluate this contention on the basis of plain error.

The allegedly prejudicial words, *e.g.*, alcohol, slave, as well as the more ordinary underlined words, *e.g.*, model, were, at best, marginally relevant to the accusations against defendant. However, we are unable to discern any particular words which are so inflammatory in nature as to cast doubt upon the validity of the conviction, and therefore, we conclude that the failure to redact the irrelevant words did not operate to deprive defendant of a fair trial. *See People v. Wood, supra.*

## IV.

Prior to trial, defendant filed a motion to admit testimony of a witness that one of the victims had told her that she was having a sexual relationship with defendant and that she had sex for money with other older men. Defendant's argument at trial, and on this appeal, is that the evidence of these alleged acts of prostitution was admissible to show that the acts complained of by the victim were consensual. The motion was accompanied by an affidavit. The trial court denied the motion without a hearing and defendant now asserts that this was error. We disagree.

Under § 18–3–407(1), C.R.S. (1986 Repl. Vol. 8B), evidence of prior or subsequent sexual conduct is presumptively irrelevant unless it is with the defendant or unless there are specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or similar evidence which would show that the act charged was not committed by the defendant.

In his brief in support of his motion to the trial court, defendant asserted that the evidence offered was the victim's subsequent acts of prostitution to demonstrate that the victim consented to sex with defendant for financial gain. Defendant contends that his offer of proof was sufficient to require the trial court to hold a hearing. We do not agree.

■ The basic purpose of the rape shield statute is to provide rape and sexual assault victims greater protection from humiliating and embarrassing public "fishing expeditions" into other sexual conduct, without a preliminary showing that the evidence thus elicited will be relevant to some issue in the pending case. *People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978).

■ Here, although the affidavit contained evidence concerning the victim's sexual contact with defendant, defendant did not argue at trial, and does not argue on appeal, that this portion should have been admitted separately from the rest of the proffered evidence. To the extent that defendant suggests that this portion was admissible at all, he advances this assertion for the first time in his reply brief, and thus, that question is not properly before this court. *See People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

The evidence which defendant apparently wished the jury to consider concerned alleged acts of prostitution which were not with defendant. Nor were these specific instances of sexual activity offered to show that the acts complained of were not committed by defendant as this was not a contested issue.

The proffered evidence was thus presumptively irrelevant and the trial court properly concluded that defendant's offer of proof was insufficient to require an evidentiary hearing. The proposed evidence had no "logical connection with [the victim's] credibility" nor "logical bearing on whether [the victim] had consented to sexual relations with the particular man on trial at the time charged." *Peo-*

**416**

ple v. McKenna, supra, 196 Colo. at 371, 585 P.2d at 277.

That the victim may have subsequently had sex for money with someone other than the defendant shed no relevant light on the issue whether she did or did not consent to sexual contact with defendant. Also, we note that whether the victim may have engaged in prostitution was not probative of any factual questions at issue; there was no evidence presented, nor did defendant contend, that the victim consented to the sexual activities in exchange for financial gain.

## V.

Defendant next contends that the admission of testimony concerning the investigation of defendant for violation of federal immigration laws constituted plain error. Again, we disagree.

The record indicates that, on cross-examination of a federal immigration agent, defense counsel asked several questions to point out weaknesses in his report concerning the alleged sexual assaults. On re-direct, in response to the prosecution's questions, the agent emphasized that the focus of his investigation was not on the allegations of sexual assault but instead on "federal crimes and alien smuggling."

Because earlier, defense counsel had elicited similar testimony from the agent during cross-examination, he may not complain on appeal about the repercussions of his counsel's trial strategy. See People v. Shackelford, 182 Colo. 48, 511 P.2d 19 (1973). Once defendant "opened the door" as to this arguably inadmissible subject, further testimony in clarification was not improperly admitted. See People v. Kruse, 819 P.2d 548 (Colo.App. 1991) rev'd on other grounds 839 P.2d 1 (Colo.1992); People v. Hise, 738 P.2d 13 (Colo.App.1986).

Secondly, contrary to defendant's assertions, the trial court gave a limiting instruction to the jury and another, written instruction to the jury when the case was submitted to them. We presume that the jury followed them. See People v. Moody, 676 P.2d 691 (Colo.1984).

Accordingly, we find no plain error.

## VI.

At defendant's request, the jury was instructed as to his theory of the case that any sexual contact with the victims was consensual. However, the trial court refused to instruct the jury as to consent as an affirmative defense. Defendant contends that this was error. We disagree.

In his argument on appeal, defendant relies solely upon the testimony of one of the victims to the effect that she did not resist or cry out when defendant had sex with her. He argues that because there was no evidence of efforts physically to resist the assault, there was an issue of consent.

Contrary to defendant's contention, however, the victim's testimony indicated that her failure to do so was motivated by fear, and submission induced by fear does not constitute consent. See Cortez v. People, 155 Colo. 317, 394 P.2d 346, (1964); see also People v. McKibben, 862 P.2d 991 (Colo.App.1993); § 18-3-401(1.5), C.R.S. (1993 Cum.Supp.). Therefore, the trial court correctly determined that this testimony does not constitute credible evidence in support of an affirmative defense of consent. See People v. Marquez, 692 P.2d 1089 (Colo.1984).

Moreover, upon reviewing the instructions as a whole, we conclude that the jury was properly instructed. In addition to defendant's theory of the case, the jury was instructed as to the prosecution's burden to prove all elements of the offense against this victim beyond a reasonable doubt and was instructed as to the elements of second degree assault, which included the elements of knowing sexual penetration accomplished by means reasonably calculated to cause submission against the victim's will. Thus, to find defendant guilty of second degree assault, the jury necessarily determined that he had caused that victim to submit without her consent.

The judgments are affirmed.

MARQUEZ and BRIGGS, JJ., concur.