A98A1357. JOHNSON v. THE STATE.
(503 SE2d 603)

ELDRIDGE, Judge.

A DeKalb County grand jury returned an indictment against appellant Alonso Johnson and two co-defendants, Herbert Maxwell and Dennis Jordan, charging each of them with one count of armed robbery, three counts of aggravated assault, one count of burglary, and two counts of false imprisonment. A jury found all three men guilty of armed robbery, one count of aggravated assault, and two counts of false imprisonment. Here, Johnson appeals, challenging the denial of his motion for directed verdict and alleging three additional errors of law. We affirm.

The evidence in this case shows that in November 1996, at approximately 8:00 p.m., Epimenio Jimenez and his brother-in-law, Ever Aquirre, were in their ground floor apartment located at 4753-A Terrace Garden Apartments, Buford Highway, Chamblee, Georgia. Also present were Jimenez' three young children and Jimenez' brother, Albaro. Aquirre heard a knock at the front door. As he opened the door, it was kicked open the remainder of the way. Maxwell entered the apartment along with appellant Johnson and Jordan.

Maxwell and Johnson had guns; Jordan carried a knife. Maxwell put his gun to Aquirre's head, and Johnson pulled several gold chains from around Aquirre's neck. Maxwell then hit Aquirre in the head with his weapon. All three of the assailants repeatedly demanded money.

After the initial assault on Aquirre, Epimenio Jimenez rushed into the bedroom to call 911. He held the bedroom door shut as the

assailants kicked at it. The police received the 911 call and immediately dispatched officers to the scene. One officer, E. Westbrooks, was on patrol nearby and reached the complex within "seconds" of the 911 call going out. Officer Westbrooks also worked security at the apartments when off-duty, so he was familiar with the precise incident location in the large complex. He pulled in front of the victims' building and waited for backup assistance.

In the apartment, the assailants were successful in kicking the bedroom door almost all the way in. When they discovered that Jimenez was on the telephone with the police, Maxwell and the co-defendants fled the apartment. They got into a black Acura that had been parked outside the victims' building and started to leave the parking lot at a high rate of speed with the car's headlights off. As Officer Westbrooks witnessed this, Albaro Jimenez rushed out into the parking lot yelling and pointing at the fleeing Acura. Westbrooks activated his blue lights and siren and followed the Acura, which then exited the complex from the drive marked "entrance," almost hitting an entering police car.

Westbrooks and other officers engaged in a high-speed chase of the black Acura down Buford Highway to Clairmont Road. The Acura reached speeds of over 90 mph and continuously changed lanes in order to avoid traffic. The Acura turned onto Clairmont where it hit a pickup truck and was knocked off the road. Westbrooks, close behind, pulled over and immediately approached the vehicle; the driver was attempting to "crank" the car in order to continue to flee. Westbrooks removed the driver from the car. Other officers on the scene removed the passengers. Jordan was the driver, appellant Johnson was the front seat passenger, and Maxwell was in the back seat of the Acura.

Only 20 minutes had elapsed between the time of the initial armed robbery and the stop. Aquirre was brought to the scene on Clairmont Road and identified appellant Johnson, Maxwell, and Jordan as the perpetrators of the armed robbery.

Thereafter, pursuant to a search of the Acura, a brown leather gun holster was found in the back seat floorboard, near where Maxwell had been sitting. The holster was marked "Smith & Wesson Model 29." Because a gun was not located in the car, officers returned to the victims' apartment building to search for one. A blue steel Smith & Wesson Model 29 revolver was located in the fire lane of the parking lot nearest the victims' building. The weapon fit the holster recovered from the Acura.

At trial, the jury heard the 911 tape, which included a terrified Epimenio Jimenez reporting what was happening as it occurred, children crying out in the background, and Jimenez' attempts to prevent the assailants from breaking in the bedroom door. The jury heard testimony from Jimenez, as well as Aquirre who made an in-court iden-

tification of Maxwell, Johnson, and Jordan as the perpetrators of the armed robbery. The jury also heard testimony from the police officers involved, including Westbrooks, regarding the chase, the investigation, and the identification of Maxwell, Johnson, and Jordan as the occupants of the Acura. An officer also testified as to Aquirre's out-of-court identification of the three men as the perpetrators of the armed robbery at the time of the incident. The jury had before it both the Smith & Wesson Model 29 holster recovered from the back floorboard of the Acura and the Smith & Wesson Model 29 revolver found in the parking lot near the victims' apartment. Also, the jury heard the statements that Aquirre and Jimenez gave to the police at the time of the incident, which statements did not vary in any material respect from their trial testimony. Neither Maxwell nor the other defendants introduced any evidence at trial. *Held*:

1. In his first enumeration of error, Johnson contends that he was denied his Sixth Amendment right to a thorough and sifting cross-examination as to statements made to the police by the victims, because the original Spanish translator who took the victims' statements (a police dispatcher) was not called as a witness at trial, although his name was included on the State's list of witnesses.[1] This contention is meritless.

(a) The record shows that Spanish translators were provided during trial, and the defense cross-examined both victims regarding their statements to the police and any alleged inconsistencies between their trial testimonies and the contents of those statements. Our review shows that no material discrepancies existed, and in any event, the alleged inconsistencies were before the jury. The impeachment value thereof was properly for the jury's determination. OCGA § 24-9-80; *Duckworth v. State*, 268 Ga. 566 (2) (492 SE2d 201) (1997).

(b) Johnson could have subpoenaed the police dispatcher had such witness been deemed necessary to him for impeachment purposes. OCGA § 17-7-191. That the dispatcher's name was on the State's witness list does not mean that the State was *required* to call him. The purpose for the list of witnesses provided by the State is to ensure that an accused is not confronted at trial with testimony against him from witnesses whom he has not had the opportunity to interview prior to trial. OCGA § 17-16-3; *Hicks v. State*, 232 Ga. 393 (207 SE2d 30) (1974). However, obtaining witnesses to aid in his defense was Johnson's responsibility.

(c) To the extent that Johnson also complains that the use of Spanish translators during trial impacted negatively on his ability to cross-examine the victims, "[t]he use of an interpreter, and the

---

[1] Spanish is the native language of victims Aquirre and Jimenez.

extent to which the examination will be allowed to proceed through him must necessarily lie within the sound discretion of the trial judge." (Citation omitted.) *Whatley v. State*, 197 Ga. App. 489, 490 (398 SE2d 807) (1990). Johnson has shown no abuse of discretion here.

2. In his second enumeration of error, Johnson contends that the trial court erred when it failed to charge the jury on the lesser included offense of robbery.[2] However, in his "Argument and Citation of Authority" in support thereof, Johnson claims only that the evidence was insufficient to support his armed robbery conviction. Johnson presents no argument or citation of authority in support of the error as enumerated. Accordingly, Johnson's unsupported claim of error number two is deemed abandoned. Court of Appeals Rule 27 (c) (2).

3. Next, Johnson challenges the trial court's denial of his motion for directed verdict as to the charges against him.

The test established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), is the proper test to use when the sufficiency of the evidence is challenged, whether the challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence. *Lester v. State*, 226 Ga. App. 373, 376 (487 SE2d 25) (1997). Accordingly, on appeal following a conviction, the evidence must be viewed in a light most favorable to the verdict, and Johnson no longer enjoys a presumption of innocence; moreover, on appeal this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Webb v. State*, 228 Ga. App. 624, 625 (492 SE2d 312) (1997).

Here, contrary to Johnson's contentions, the evidence showing that Johnson, carrying a gun, burst into the victims' apartment and pulled gold chains from around Aquirre's neck demonstrates more than his "mere presence" in the victims' apartment. It shows Johnson's commission of an armed robbery. Also, the evidence showed that Johnson was a party to the commission of an aggravated assault, i.e., when Maxwell struck Aquirre in the head with a gun. See OCGA § 16-2-20.

Further, the evidence showed that following the initial armed robbery, Johnson, Maxwell, and Jordan detained the victims at gunpoint while demanding additional money. The fact that Epimenio Jimenez was forced to run to the bedroom to call 911 does not negate the fact that neither victim was free to leave the apartment as long

---

[2] Johnson did not submit a written request to charge on the lesser included offense of robbery; further, the evidence did not support such a charge as it was uncontradicted that each of the perpetrators was armed.

as the perpetrators were present, armed, and intent on violence. Evidence of a detention for any period of time, without authority, against a person's will, and in violation of his or her personal liberty may support a conviction for false imprisonment. OCGA § 16-5-41. *Mayorga v. State*, 225 Ga. App. 496 (484 SE2d 292) (1997); compare *Webb v. State*, 210 Ga. App. 27 (435 SE2d 251) (1993); *Butler v. State*, 194 Ga. App. 895, 898 (3) (392 SE2d 324) (1990); *Gilbert v. State*, 176 Ga. App. 561, 562 (2) (336 SE2d 828) (1985).

Accordingly, the evidence was more than sufficient for a rational trier of fact to have found Johnson guilty beyond a reasonable doubt of the offenses of armed robbery, aggravated assault, and two counts of false imprisonment.

4. We find as meritless Johnson's contention that the trial court erred in charging the jury that reasonable doubt is not an imaginary doubt, but is a doubt for which a reason may be given. Such charge does not express the trial court's "opinion" and has been approved by this Court as a correct statement of law. See *Lewis v. State*, 158 Ga. App. 586, 587 (2) (281 SE2d 331) (1981).

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JUNE 2, 1998.

*Dorothy Williams*, for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Jeanne M. Canavan, Assistant District Attorneys*, for appellee.

