2012 COA 109

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Crecenciano MUNOZ–CASTENEDA, Defendant–Appellant.**

**No. 09CA2629.**

Colorado Court of Appeals, Div. IV.

July 5, 2012.

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Adam N. Mueller, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Chief Judge DAVIDSON.

¶ 1 Defendant, Crecenciano Munoz–Casteneda, appeals from the judgment of conviction entered on jury verdicts finding him guilty of possession with intent to distribute a schedule II controlled substance (cocaine) and possession of drug paraphernalia. We affirm. As a matter of first impression, we hold that when a fact witness translating an out-of-court conversation in which he or she participated (1) has personal knowledge of the relevant conversation; (2) is capable of translating the recording of that conversation without misleading the jury; and (3) is subject to cross-examination, he or she need not meet the standards required of a court-certified interpreter. We also address limitations on the prosecution's reference to or use of evidence pertaining to Mexican drug trafficking organizations.

I. Background

¶ 2 In November 2008, the Western Colorado Drug Task Force conducted a multi-day surveillance of two trailers. As a result of this surveillance and related traffic stops of targeted automobiles, the police obtained a search warrant for both trailers. During the search, the police found approximately two ounces of cocaine, two digital scales, pay/owe sheets, receipts bearing defendant's name, and stacks of cash in the middle bedroom of one of the trailers.

¶ 3 After the search, the police interrogated defendant, whom they had arrested earlier that day for failing to provide proof of insurance during a traffic stop. Because defendant did not speak English, a Spanish-speaking detective conducted the interrogation and translated the conversation for a non-Spanish speaking officer who was present. The conversation, including the contemporaneous translation, was recorded.

¶ 4 As recounted by the Spanish-speaking detective at trial, defendant said, during the interrogation, that he had found the cocaine in the living room, but it was not his. He said he had hidden it in his bedroom, which he described as the middle bedroom, so that his mother, with whom he lived, would not find it. He also said he was just holding it until he could return it to whoever had left it.

¶ 5 Defendant was charged with one count of possession with intent to distribute cocaine and one count of possession of drug paraphernalia. The jury found him guilty as charged, and the court sentenced him to a term of six years in the custody of the Department of Corrections plus five years of mandatory parole.

II. Translation Testimony

¶ 6 Defendant contends that the trial court erred by allowing the detective who interrogated him to translate that recorded interrogation during his trial testimony without meeting the requirements for interpreters set forth in CRE 604 and 702. We disagree.

A. Standard of Review

¶ 7 We review the trial court's decision to admit testimony for an abuse of discretion and will disturb that decision only where it is manifestly arbitrary, unreasonable, or unfair. *People v. Stewart,* 55 P.3d 107, 122 (Colo.2002). Because defendant objected to the court's allowing the detective to translate the interrogation on the grounds that the detective was not a court-certified interpreter and was not qualified to translate the evidence, we disagree with the People and consider this objection sufficient properly to preserve the issue of the admissibility of the challenged testimony. *See United States v. Urena,* 27 F.3d 1487, 1492 (10th Cir.1994) ("[A] general objection to translator competence may be sufficient to preserve the issue

on appeal if it represents a good faith effort by defense counsel to address perceived translation problems.").

B. Functional Distinction Between Court–Certified Interpreters and Fact Witnesses

¶ 8 CRE 604 governs the use of interpreters at trial: "An interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation that he will make a true translation." *See People v. Braley,* 879 P.2d 410, 412 (Colo.App.1993).

¶ 9 The role of a court-certified interpreter is to protect the fundamental fairness of the trial by ensuring that a non-English speaking defendant can understand the proceedings and that the trier of fact can understand the testimony of a non-English speaking witness. *See People v. Ochoa–Magana,* 36 P.3d 141, 143–44 (Colo. App.2001); *People v. Avila,* 797 P.2d 804, 805–06 (Colo.App.1990). While an interpreter's competence and the accuracy of the translation are subject to challenge, *Braley,* 879 P.2d at 413, an interpreter is not a participant in the trial proceedings in the traditional sense, but merely a conduit of information. Thus, a court should generally depend on the interpreter's qualifications and the oath or affirmation that he or she will produce an accurate translation. *See People v. Mejia–Mendoza,* 965 P.2d 777, 781 (Colo.1998); *People v. Gutierrez,* 916 P.2d 598, 600 (Colo.App.1995); *Braley,* 879 P.2d at 412–13.

¶ 10 Accordingly, an interpreter must be neutral and impartial, *see Lujan v. United States,* 209 F.2d 190, 192 (10th Cir. 1953); *Braley,* 879 P.2d at 412, and qualified to interpret by virtue of "knowledge, skill, experience, training, or education," CRE 702; *see Braley,* 879 P.2d at 412. A court should determine whether an interpreter meets these qualifications before the interpreter begins his or her translation duties. *Braley,* 879 P.2d at 413.

¶ 11 Conversely, the role of a fact witness is to relate, based on personal knowledge, information or events relevant to an issue at trial. *See* CRE 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."); *Burlington N. R.R. Co. v. Hood,* 802 P.2d 458, 468–69 (Colo.1990).

¶ 12 A fact witness need not be neutral and impartial, but must provide a truthful recollection of events. *See* CRE 603 ("Before testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation."). The witness's credibility and truthfulness are subject to cross-examination and, generally, to impeachment by independent evidence. *See* CRE 607; *People v. Garcia,* 826 P.2d 1259, 1264 (Colo.1992); *see also* CRE 608; *Avila,* 797 P.2d at 805. It is these procedures, rather than any type of court certification, that ensure truthful and accurate fact witness testimony.

¶ 13 When a fact witness's testimony includes an English translation of his out-of-court conversation with a non-English speaker, his role does not change from fact witness to neutral interpreter for purposes of that testimony. *See United States v. Villalta,* 662 F.2d 1205, 1206–07 (5th Cir.1981) (the rules of evidence pertaining to expert witnesses and interpreters are not applicable to a witness testifying about out-of-court conversations he participated in with the defendant in a foreign language); *Commonwealth v. Shooshanian,* 210 Mass. 123, 96 N.E. 70, 70 (1911) ("The narration in English ... is covered by his oath as a witness. It is only when testimony given in a foreign tongue requires translation in court that an interpreter is sworn specially for that purpose." (quoting *Commonwealth v. Kepper,* 114 Mass. 278, 280 (1873))); *State v. Roldan,* 151 N.H. 283, 855 A.2d 445, 449 (2004) (rules applicable to neutral court interpreters retained by the court do not apply to testimony regarding the meaning or accuracy of foreign language evidence); 27 Charles Alan Wright et al., *Federal Practice & Procedure* §§ 6053, 6054 (2d ed. 2011) ("Rule 604's requirement that an interpreter must qualify as an expert witness may be relaxed" "[w]here a witness translates into English the contents of an out-of-court statement she heard in a foreign lan-

guage, [even though] that witness in part functions like a witness interpreter").

¶ 14 Thus, we conclude that, as long as the translating witness has personal knowledge of the relevant conversation or evidence, is capable of testifying to a translation of its contents without misleading the jury, and is subject to cross-examination, he may testify without first being certified as an interpreter. *See Washington v. Texas,* 388 U.S. 14, 22, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (" '[T]he truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case, leaving the credit and weight of such testimony to be determined by the jury or by the court. . . .' " (quoting *Rosen v. United States,* 245 U.S. 467, 471, 38 S.Ct. 148, 62 L.Ed. 406 (1918))); *United States v. Hernandez,* 693 F.2d 996, 999–1000 (10th Cir.1982) (no error in allowing a witness who was not a court-certified interpreter, but who understood both English and Spanish, to translate the defendant's prior statement and a document the defendant had previously given him during his in-court testimony); *Burlington,* 802 P.2d at 469 ("[A]s long as there is evidence before the trial court that the jury, as the trier of fact, could reasonably find that the witness has personal knowledge of the event to which [he or she] is about to testify, the witness should be permitted to testify, and the questions of credibility and weight should be left for the jury to resolve."); *see also Shooshanian,* 96 N.E. at 70 ("There was no error in permitting the witness ... to state in English the substance of the conversation between him and the defendant held in a foreign language."); *Roldan,* 855 A.2d at 448–49 (same); *cf. State v. Garcia,* 299 Conn. 39, 7 A.3d 355, 367–68 (2010) (the defendant was free to cross-examine officer's translation of the defendant's confession on issues of competence, methodology, and potential bias; the ultimate determination of the accuracy of the translation rested with the jury).

¶ 15 To support a contrary result, defendant cites two Florida decisions, *Ortega v. State,* 721 So.2d 350 (Fla.Dist.Ct.App.1998), and *Gopar–Santana v. State,* 862 So.2d 54 (Fla.Dist.Ct.App.2003). In each, the appellate court determined that the trial court abused its discretion by admitting a police officer's translation of a recorded conversation between himself and the defendant during the officer's trial testimony as a fact witness. Defendant reads these decisions as setting forth a rule that any testifying witness requires court certification before translating any evidence.

¶ 16 To the extent these opinions reflect a bright line rule requiring court certification whenever a witness's testimony includes a non-English translation, they are unpersuasive and we decline defendant's invitation to follow them. Furthermore, we do not read either case so broadly. Instead, we think it significant to the result in *Ortega,* on which *Gopar–Santana* relied, that the trial court prevented the defendant from testifying to inaccuracies in the translation. *See Ortega,* 721 So.2d at 351. Thus, not only was there no court-certified interpreter, but also, more importantly, the defendant was denied any opportunity to challenge the witness's interpretation.

C. Application

¶ 17 For the following reasons, the trial court here properly exercised its discretion to allow the detective to include in his testimony a translation of the recorded conversation he had with defendant:

1. Because he conducted it, the detective had personal knowledge of defendant's interrogation. *See* CRE 602; *Villalta,* 662 F.2d at 1206–07; *People v. Tillery,* 231 P.3d 36, 42 (Colo.App.2009), *aff'd sub nom. People v. Simon,* 266 P.3d 1099 (Colo. 2011); *Roldan,* 855 A.2d at 449.

2. The detective also demonstrated sufficient knowledge and ability to translate the conversation without misleading the jury. *See United States v. Verdin–Garcia,* 516 F.3d 884, 893 (10th Cir.2008); *Hernandez,* 693 F.2d at 999–1000. He explained that he is Mexican–American, born in the United States, and that he grew up speaking Kahlo—a type of "street Spanish." He said he uses Kahlo to converse with Spanish-speaking individuals in his professional duties as a police officer and considers

himself fluent. He then said he used Kahlo to conduct defendant's interrogation and that neither he nor defendant had any difficulty understanding the other.

Further, the detective acknowledged that there were portions of the interrogation that were difficult for him to translate, and did not offer a literal translation.

3. The prosecution provided the recording to defendant during discovery, defendant had two court-certified interpreters translating the trial proceedings for him, and the detective was subject to cross-examination.

4. Despite ample opportunity to challenge the detective's translation either by expert testimony or by cross-examination, defendant did not assert at trial that the detective's translation was materially inaccurate. *See People v. Wafai,* 713 P.2d 1354, 1356–57 (Colo.App.1985) ("[I]nasmuch as defendant had a full opportunity to cross-examine the expert and to argue in closing argument against the accuracy of the translation, there was no error in the admission of the translation."), *aff'd,* 750 P.2d 37 (Colo.1988); *see also Villalta,* 662 F.2d at 1206–07; *Braley,* 879 P.2d at 413; *Johnson v. State* [232 Ga.App. 717], 503 S.E.2d 603, 606 (Ga.Ct.App.1998); *Baltazar–Monterrosa v. State* [122 Nev. 606], 137 P.3d 1137, 1143–44 (Nev.2006).

5. Although the detective here, like the officer in *Ortega,* did not provide a literal translation, we are not aware of any such requirement. *See Braley,* 879 P.2d at 412–13; *see also Baltazar–Monterrosa,* 137 P.3d at 1142 ("In evaluating the translation of testimony, a reviewing court asks whether the translation was adequate and accurate on the whole. 'Translation is an art more than a science, and there is no such thing as a perfect translation of a defendant's testimony. Indeed, in every case there will be room for disagreement among expert translators over some aspects of the translation.'" (footnote omitted) (quoting in part *State v. Mitjans,* 408 N.W.2d 824, 832 (Minn.1987))). Further, any challenge to the accuracy of the detective's translation was an issue of weight, not admissibility. *Burlington,* 802 P.2d at 469; *Wafai,* 713 P.2d at 1356–57; *accord Hernandez,* 693 F.2d at 999.

¶ 18 Therefore, regardless that, as a fact witness, the detective was not certified or sworn by the court as an official interpreter, because he had personal knowledge of the relevant conversation, was sufficiently capable of translating a recording of the conversation without misleading the jury, and was subject to cross-examination, the trial court properly permitted him to translate his conversation with defendant.

### III. Prosecutorial Misconduct

¶ 19 Defendant contends the prosecutor impermissibly introduced the issue of Mexican drug trafficking organizations into the trial through his voir dire questioning of prospective jurors and his direct examination of his expert witness. We agree, but in light of the overwhelming evidence of defendant's guilt, we conclude that the misconduct does not warrant reversal.

#### A. Standard of Review

¶ 20 It is within the trial court's discretion to determine whether a prosecutor's conduct is improper. *People v. Strock,* 252 P.3d 1148, 1152 (Colo.App.2010). Although a prosecutor may comment on the evidence and all reasonable inferences to be drawn from that evidence, he may not misstate the evidence, use arguments calculated to inflame the passions and prejudices of the jury, or assert his personal opinion as to the truthfulness of witnesses. *See People v. Dunlap,* 975 P.2d 723, 758 (Colo.1999); *People v. Brown,* — P.3d —, —, 2011 WL 3332314 (Colo.App.2011). He also should refrain from injecting irrelevant issues into the trial by making arguments that would divert the jury from deciding the case based on the evidence. *Harris v. People,* 888 P.2d 259, 265–66 (Colo.1995); *People v. Sandoval–Candelaria,* — P.3d —, —, 2011 WL 2186433 (Colo.App.2011); *see People v. Adams,* 708 P.2d 813, 815 (Colo.App.1985).

¶ 21 In reviewing alleged misconduct, we engage in a two-step analysis. First, we must determine whether the conduct was improper considering the context of

the trial as a whole and the evidence before the jury. *Sandoval-Candelaria*, —— P.3d at ——.

¶ 22 Second, if we conclude the conduct was improper, we must determine whether it warrants reversal under the proper standard of review. *Id.* We "evaluate the severity and frequency of the misconduct and the likelihood that the misconduct constituted a material factor leading to the defendant's conviction." *People v. Cevallos-Acosta*, 140 P.3d 116, 123 (Colo.App.2005); *see People v. Walters*, 148 P.3d 331, 335 (Colo. App.2006) ("[W]e consider, among other things, the language used, the context of the statements, whether a statement improperly expressed the prosecutor's personal opinion, whether the statement is an acceptable comment on the credibility of witnesses, the strength of the evidence, whether the evidence is conflicting or inconclusive, whether the prosecutor improperly appealed to the jurors' sentiments, whether the misconduct was repeated, and any other relevant factors.").

¶ 23 Here, because defendant failed to object, we review any misconduct for plain error. *Cevallos-Acosta*, 140 P.3d at 122; *see Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo.2005) ("Plain error occurs only when an error so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the jury's verdict.... Only prosecutorial misconduct which is 'flagrantly, glaringly, or tremendously improper' warrants reversal." (quoting in part *People v. Avila*, 944 P.2d 673, 676 (Colo.App.1997))).

B. Challenged Conduct

¶ 24 During voir dire, the prosecutor asked the prospective jurors if they thought drug dealing was a business and if they were familiar with Mexican drug trafficking organizations. The prosecutor and the prospective jurors then discussed the recent increase in drug-related activity in Mexico, noting the large amount of fighting and killing.

¶ 25 During the trial, the prosecutor called to testify the case agent who had led the investigation that resulted in defendant's arrest. The case agent initially testified as a fact witness, but was then qualified as an expert "in distribution quantities, dosages, prices, and packaging" and recalled to testify accordingly. The prosecutor asked the case agent about his experience with drug trafficking organizations:

Q Is it common from your training and experience that trafficking organizations at the level we are talking about ... that that type of organization is often an interfamilial organization?

A Yes. It has been my experience, especially dealing with some of the Mexican drug trafficking organizations that they are, stick with their family. I believe in my opinion that it's just a trust thing and they feel comfortable with each other and that's usually how those operations are and it's been my experience that these types of organizations are either brothers or brother and sister or cousins or father/son, that's been my experience when dealing with Hispanic or mostly not even Hispanic but Mexican drug trafficking.

....

Q From your training and experience, do they tend to protect each other and back each other up pretty significantly?

A Absolutely. These guys go back their family, just like any one of, you know, a lot of people do, will back their family, whether that be protecting them from physical harm by watching each other's back or lying for each other. I believe they would do both.

C. The Conduct Was Improper

¶ 26 We conclude that the prosecutor's conduct was improper because it injected into the trial an issue that had no apparent relevance and created the risk that the jurors would decide the case based on their passions and prejudices rather than the evidence.

1. Relevance

¶ 27 Generally, all relevant evidence is admissible. CRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the deter-

mination of the action more probable or less probable than it would be without the evidence." CRE 401.

¶ 28 However, any discussion by the prosecutor about Mexican drug trafficking organizations either before or during trial had little relevance here. Defendant was charged with possession of drug paraphernalia and possession with intent to distribute cocaine. Neither of those offenses required the prosecutor to prove that defendant was involved with an organization or with any individual other than himself. *See* §§ 18–18–405(1)(a), 18–18–428(1), C.R.S.2011. This case is unlike a case where, for example, the defendant is charged with conspiracy, which would require the prosecutor to prove the defendant's involvement with others. Here, the elements of the charged offenses relate only to defendant's own actions and mental state. *See United States v. Vallejo,* 237 F.3d 1008, 1012 (9th Cir.), *amended,* 246 F.3d 1150 (9th Cir.2001); *People v. Covarrubias,* 202 Cal.App.4th 1, 134 Cal.Rptr.3d 455, 469 (2011); *see also United States v. Verduzco,* 373 F.3d 1022, 1034–35 (9th Cir.2004) ("[G]eneralized testimony on Mexican drug culture had at best a slim, tenuous connection to [the defendant] and the particular facts of his case.").

2. Unduly Prejudicial

¶ 29 Furthermore, even when evidence has some relevance, it is excludable when "its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403.

¶ 30 We see no probative value in evidence of Mexican drug trafficking in relation to the possession of drug paraphernalia count against defendant. As to the charge of possession with intent to distribute, the People submit that discussion of Mexican drug trafficking provided some contextual relevance. Nevertheless, even assuming some degree of relevance, other courts under similar circumstances have held that evidence that the defendant was involved in a larger drug trafficking organization should be excluded due to its potentially high prejudicial effect. *See Vallejo,* 237 F.3d at 1016; *accord United States v. Pineda–Torres,* 287 F.3d 860, 865–66 (9th Cir.2002); *Covarrubias,* 134 Cal. Rptr.3d at 466–69. "Evidence is unfairly prejudicial where it introduces into the trial considerations extraneous to the merits, such as bias, sympathy, anger, or shock." *People v. Greenlee,* 200 P.3d 363, 367 (Colo.2009).

¶ 31 Moreover, although the prosecutor made repeated reference to Mexican drug trafficking organizations, there was no evidence presented to the jury that defendant was involved with one. *See Vallejo,* 237 F.3d at 1015; *Covarrubias,* 134 Cal.Rptr.3d at 466, 469. By raising the issue, the prosecutor risked improperly implying that he had access to evidence not presented to the jurors. *See People v. Clark,* 214 P.3d 531, 542–43 (Colo.App.2009), *aff'd,* 232 P.3d 1287 (Colo.2010); *cf. People v. Jones,* 832 P.2d 1036, 1040 (Colo.App.1991).

¶ 32 Discussing the issue also risked inflaming the jurors' prejudices, particularly in light of widespread awareness of an increase in drug-related violence in Mexico. *See Harris,* 888 P.2d at 266 ("Repeated references to events occurring outside the courtroom, involving persons not party to the proceedings, can all too easily encourage jurors to abandon their role of evaluating the evidence under circumscribed legal standards."); *People v. Arrington,* 843 P.2d 62, 65–66 (Colo. App.1992) (testimony referring to the defendant's alleged gang affiliation was improper where it "appears to have been asked for the sole purpose of injecting an irrelevant and probably prejudicial matter before the jury").

D. The Improper Conduct Does Not Warrant Reversal

¶ 33 We disapprove of the prosecutor's conduct. Nevertheless, the evidence of defendant's guilt on both counts was overwhelming. Thus, we cannot conclude that the conduct affected the jury's verdict.

¶ 34 The record shows irrefutable evidence of possession of drug paraphernalia, and defendant does not contend to the contrary.

¶ 35 There also is overwhelming evidence of defendant's guilt of possession with intent to distribute. The jury had before it the physical evidence that the police had found in defendant's bedroom: two digital scales; pay/owe sheets; stacks of cash; and

approximately two ounces of cocaine, divided into smaller amounts and packaged in separate bags. This evidence alone was sufficient proof of defendant's intent to distribute. *See People v. Atencio,* 140 P.3d 73, 76 (Colo.App. 2005); *see also United States v. Triana,* 477 F.3d 1189, 1195 (10th Cir.2007).

¶ 36 Furthermore, the jury heard the expert's testimony regarding distribution quantities, dosages, prices, and packaging. The expert explained the various quantities into which cocaine is generally broken down for sale and use, how these quantities differ depending on whether the buyer is a lower level dealer or the ultimate user, the rationale behind these differences, and the approximate price of each quantity. He gave his opinion that the evidence found in defendant's bedroom was indicative of a fairly large-scale drug dealer and that the amount of cocaine found was a distribution amount. *See Atencio,* 140 P.3d at 76.

¶ 37 Moreover, the jury heard defendant's own testimony during the trial. Defendant testified, consistent with his post-arrest interrogation, that he had found the cocaine in the living room, had hidden it in his bedroom, and was planning to return it to whoever had left it in the trailer, thus admitting to the elements of possession with intent to distribute. *See* § 18–18–405(1)(a); *see also* § 18–18–102(7), (11), C.R.S.2011 (" 'Distribute' means to deliver other than by administering or dispensing a controlled substance, with or without remuneration," and " 'Deliver' ... means to transfer or attempt to transfer a substance, actually or constructively, from one person to another, whether or not there is an agency relationship."); *People v. Clendenin,* 232 P.3d 210, 216 (Colo.App. 2009); *Durham v. United States,* 743 A.2d 196, 203–04 (D.C.1999) (court concluded that by giving drugs back to the person who had given them to him, the defendant "distributed" the drugs).

¶ 38 Accordingly, the prosecutor's conduct, while improper, does not warrant reversal.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

### IV. Defendant's Remaining Contentions

¶ 39 Defendant's remaining contentions allege unpreserved evidentiary errors and additional unpreserved instances of prosecutorial misconduct; therefore, we review under a plain error standard. However, the overwhelming evidence of defendant's guilt precludes reversal for plain error on all of these grounds. We therefore do not further address the substance of defendant's remaining contentions.

¶ 40 The judgment is affirmed.

STERNBERG * and VOGT *, JJ., concur.